IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HERITAGE HANDOFF HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>RONALD FONTANELLA,<br><br>Defendant. | Civil Action No. 1:16-cv-00691-RGA |

**MEMORANDUM ORDER**

Presently before me is Defendant Ronald Fontanella's Motion to Alter Judgment or Amend the Judgment. (D.I. 197). The Parties have briefed the issues. (D.I. 197, 210). For the reasons discussed below, I will deny Mr. Fontanella's Motion.

The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). A motion for reargument/reconsideration is not an appropriate vehicle to reargue issues that the court has already considered and decided. *Justice v. Attorney Gen. of Delaware*, 2019 WL 927351, at *2 (D. Del. Feb. 26, 2019).

In my March 6, 2019 Memorandum Opinion, I found that Plaintiff paid Mr. Fontanella $12,000,000 to acquire Rex Forge. (D.I. 182 at 20). Mr. Fontanella objects to my determination. His position is, "The correct Purchase Price as a matter of law for fixing damages was $10,386,065, comprising (a) a Cash Purchase Price of $7,886,065, as adjusted per the express

terms of the SPA, and (b) a $2,500,000 Note." (D.I. 197). Thus, he argues, I clearly erred when I calculated damages using a $12,000,000 Purchase Price. (*Id.*). Mr. Fontanella's argument is that the $12,000,000 Purchase Price listed in the stock purchase agreement ("SPA" found at PTX 4) is not, in fact, the correct purchase price. (D.I. 197 at 9-15). He presented his arguments on this point at trial, in his proposed findings of fact, and in post-trial briefing. (*See* D.I. 157-60 ("Tr.") at 10:12-17, 602:7-604:11, 1178:20-1179:11; D.I. 170 at RFOF 116, 160; D.I. 169 at 24).

Mr. Fontanella argues that I misapprehended his argument the first three times. I did not. I simply disagree with it. The SPA states, unequivocally, "The total purchase price (the "Purchase Price") **shall** be Twelve Million Dollars ($12,000,000)." (SPA § 1.2 (second emphasis added)). It goes on to describe how the purchase price will be paid: (a) a "Cash Purchase" amount that is "equal" to $9,500,000 as calculated pre- and post-closing pursuant to SPA § 1.3 and (b) a $2,500,000 promissory note. (SPA §1.2(a)-(b)). The SPA specifies that, pre-closing, the anticipated "amount equal to" $9.5 million, as calculated under SPA § 1.3(a) was $8,393,065. (SPA § 1.2(a), *see* SPA § 1.3(a) (stating that "the number inserted for the Cash Purchase Price in Section 1.2(a) of the final execution version of this Agreement reflects the aforementioned adjustments"). That amount was still subject to post-closing adjustments under SPA § 1.3(d). (*Id.*). The record reflects that the § 1.3(d) post-closing adjustment was $507,000. (DTX 163). Thus, the cash purchase amount "equal" to $9,500,000 was $7,866,000 (the pre-closing adjusted amount less the post-closing adjustment). That is, in order to achieve a total purchase price equal to $12 million under the SPA, Plaintiff was obligated to pay Mr. Fontanella $7,866,000 and the $2.5 million note.

Although I stand by my conclusion that Mr. Fontanella received the $12 million purchase price for Rex, I admit that I misstated the cause of the pre- and post- closing adjustments. In my

2

Memorandum Opinion, I stated, "the working capital adjustments were the result of Mr. Fontanella wiring himself $1.6 million more than he was entitled to from Rex's bank account." (D.I. 182 at 20). That is incorrect. The pre- and post-closing adjustments account for adjusting the amount of cash transferred between the Parties to achieve the Net Working Capital contemplated by the agreement while maintaining a $12 million purchase price. So, Mr. Fontanella was not at fault for the net working capital adjustments, as the Memorandum Opinion may have implied. Rather, he was obligated to make certain adjustments to achieve the price listed in the SPA.

Although I misstated the precise cause of the capital adjustments, I do not agree with Mr. Fontanella that the purchase price was something less than $12,000,000. Accordingly, Mr. Fontanella's Motion to Alter Judgment or Amend the Judgment (D.I. 197) is **DENIED**.

IT IS SO ORDERED this 31 day of May 2019.

Richard G. Andrews
United States District Judge

3